IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

NATURAL RESOURCES DEFENSE COUNCIL )
1200 New York Avenue, NW, Suite 400 )
Washington, DC  20005, )
 )
BIODIVERSITY CONSERVATION ALLIANCE )
Post Office Box 1512 )
Laramie, WY  82073, )
 )
WYOMING OUTDOOR COUNCIL )
232 Lincoln Street )
Lander, WY  82520, )
 )
WESTERN WATERSHEDS PROJECT )          Civ. No.
Post Office Box 1160 )
Pinedale, WY  82940, )
 )
WYOMING WILDERNESS ASSN. )
Post Office Box 6588 )
Sheridan, WY )
 )
       Plaintiffs, )
 )
             v. )
 )
DIRK KEMPTHORNE, in his official capacity )
As the Secretary of the United States )
Department of the Interior )
1849 C Street, NW )
Washington, DC  20240, )
 )
U.S. DEPARTMENT OF THE INTERIOR )
1849 C Street, NW, Room 406-LS )
Washington, DC  20240, )
 )
U. S. BUREAU OF LAND MANAGEMENT )
1849 C Street, NW, Room 406-LS )
Washington, DC  20240, )
 )
       Defendants. )
_____)

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.    This lawsuit challenges actions by the Department of the Interior and the Bureau of Land Management ("BLM") to approve ground disturbing activities as part of the Atlantic Rim Natural Gas Field Development Project in Wyoming's Red Desert.  These activities include drilling new wells, as well as blazing new roads across previously untouched areas.  This drilling and road construction is occurring now.

2.    Specifically, BLM has approved at least 90 new wells in the project area without providing the public participation or the analysis required by the National Environmental Policy Act ("NEPA").  These new wells are part of a project that includes 2,000 new wells in an area southwest of Rawlins, Wyoming.

3.    In addition to the 90 new wells that BLM has already approved, 243 more applications for permits to drill are pending before the agency.  BLM could approve the applications for many of these additional wells at any time.

4.    The proposed project area is a place of stunning beauty with rolling hills, canyons, dune fields and diverse sagebrush communities.  With consistent water resources, the Atlantic Rim contains some of Wyoming's best wildlife habitat for species such as elk, pronghorn antelope, and sage grouse.

5.    Thousands of citizens across America value the proposed project area for hiking, backpacking, hunting, fishing – a place of solitude to reflect and recharge.  BLM is well aware of this widespread interest in the lands at issue.  Yet, the agency has proceeded full steam ahead with rapid energy development that has and will continue to harm other valuable uses of the affected lands.  BLM has acknowledged that the approved project will convert the "natural setting" of the area "to an industrialized setting."

6.    Despite BLM's knowledge of the specific interest of Biodiversity Conservation Alliance ("BCA") and other plaintiffs in Applications for Permits to Drill ("APDs") in the Atlantic Rim

project area, the agency approved at least 90 wells without providing notice or the environmental

analysis accompanying the APD approval to BCA or the other plaintiffs.

7.   BLM moved ahead with these 90 wells without any input from the affected public.  The

agency approved two entire Plans of Development ("PODs") without providing any

environmental analysis to the public for comment.  BLM approved 39 wells as part of Catalina

PODs A & B and 51 wells as part of Sun Dog PODs A & B.  BLM's actions in approving these

90 wells fail to satisfy the mandates of NEPA, the Federal Land Policy and Management Act and

the Clean Water Act.

## JURISDICTION AND VENUE

8.   This court has jurisdiction over this action pursuant to the National Environmental Policy

Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.* and its implementing regulations;  Federal Land Policy

Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.* and its implementing regulations;  the

Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* and its implementing regulations;  the Declaratory

Judgment Act, 28 U.S.C. § 2201;  the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et

seq.*;  and 28 U.S.C. § 1331 (federal question).  BLM's decisions approving 90 wells in the

Catalina and Sundog A & B PODs constitute "final agency action" for purposes of APA review.

9.   Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

10.   Venue is proper in the United States District Court for the District of Columbia pursuant

to 28 U.S.C. § 1391(e), because the United States Department of the Interior and its agency, the

Bureau of Land Management, are headquartered in Washington D.C.  Plaintiff Natural Resources

Defense Council resides in Washington, D.C.

## PARTIES

11.  Plaintiff NATURAL RESOURCES DEFENSE COUNCIL ("NRDC") is a non-profit environmental membership organization with more than 400,000 members throughout the United States.  NRDC members use and enjoy public lands in Wyoming, including the specific lands at issue, for a variety of purposes, including: recreation, solitude, scientific study, and aesthetic appreciation.  NRDC has had a longstanding and active interest in the protection of public lands in Wyoming.  NRDC filed comments on both the draft and final environmental impact statements for the Atlantic Rim Development Project.  Recently, NRDC submitted a letter to BLM's State Director in Wyoming requesting that that the agency add a quantitative analysis to the air quality analysis contained in several draft Resource Management Plans covering parts of Wyoming.  Over the years, NRDC has participated in a number of court cases involving resource development issues, including NEPA compliance, throughout the American West.  NRDC brings this action on its own behalf and on behalf of its members.

12.  Plaintiff BIODIVERSITY CONSERVATION ALLIANCE ("BCA") is a nonprofit conservation organization located in Laramie, Wyoming, dedicated to protecting wildlife and wildlands in Wyoming and surrounding states.   BCA has hundreds of members in Wyoming and neighboring states, who have an interest in recreating on and preserving the public lands found in Wyoming's Red Desert, including the lands covered by the Atlantic Rim project.  BCA brings this action on its own behalf and on behalf of its members.

13.  Plaintiff WYOMING OUTDOOR COUNCIL ("WOC") is a non-profit conservation organization with over 1,000 members in Wyoming, other states and abroad.  WOC is dedicated to the protection and enhancement of Wyoming's environment, communities and quality of life.  WOC's members live in and near the Atlantic Rim project area.  WOC is based in Lander,

Wyoming, approximately 90 miles from the project area. WOC brings this action on its own behalf and on behalf of its members.

14. Plaintiff WESTERN WATERSHEDS PROJECT ("WWP") is an Idaho not-for-profit conservation organization with over 1,600 members who live in Wyoming, Idaho and other states across the United States. WWP has offices and staff in Hailey and Boise, Idaho; Pinedale, Wyoming; Tehachapi, California and Mendon, Utah. WWP's Wyoming Office is headquartered in Pinedale, Wyoming and is staffed by WWP's Wyoming Director Jonathan Ratner. WWP, and its staff and members, have actively participated in agency proceedings and other advocacy efforts concerning management of public lands in Wyoming, including actions by BLM's Rawlins Field Office. WWP brings this action on its own behalf and on behalf of its members.

15. Plaintiff WYOMING WILDERNESS ASSOCIATION ("WWA") is a nonprofit group dedicated to ensuring the preservation for future generations the benefits, known and unforeseen, of Wyoming's naturally functioning wild land ecosystems. In order to provide for the greatest range of values, including haven for wildlife and fish, watershed protection, pools of genetic diversity, and dispersed types of non-motorized recreation, scientific inquiry, and spiritual fulfillment, the Association is committed to the considered selection and protection of these areas. WWA has more than a hundred members in Wyoming and neighboring states, who have an interest in recreating on and preserving the public lands found in Wyoming's Red Desert. WWA brings this action on its own behalf and on behalf of its members.

16. Defendant DIRK KEMPTHORNE is sued in his official capacity as Secretary of the Department of the Interior. In that capacity he is responsible for ensuring that the Department and the agencies within the Department, including the Bureau of Land Management, comply with all applicable laws and regulations, including NEPA.

17.   Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is the federal agency responsible for managing just under 500 million acres of federal public lands for a variety of competing resources, including oil and gas development, as well as for the protection of the natural and human environment.  The Department of the Interior is required to comply with NEPA and to evaluate, analyze, and disclose the impacts of federal undertakings to the public.

18.   Defendant BUREAU OF LAND MANAGEMENT is the agency within the U.S. Department of the Interior directly responsible for carrying out the Department's obligations under statutes and regulations governing oil and gas exploration, leasing, and development, and for complying with NEPA.  The BLM manages approximately 18 million acres in Wyoming.

## STATUTORY AND REGULATORY FRAMEWORK

### National Environmental Policy Act

19.   The National Environmental Policy Act is our nation's basic charter for the protection of the environment and it "contains 'action forcing' provisions to make sure that federal agencies act according to the letter and spirit of the Act."  40 C.F.R. § 1500.1.  NEPA also ensures the public that it is given a role in the management of public resources including the public lands managed by the Bureau of Land Management.  40 C.F.R. § 1500.1(b) ("public scrutiny [is] essential to implementing NEPA").

20.   The Council on Environmental Quality ("CEQ") was created under NEPA to promulgate regulations "to tell federal agencies what they must do to comply with the procedures and achieve the goals" of NEPA.  42 U.S.C. § 4342.

21.   NEPA requires each federal agency to prepare and circulate for public review and comment a detailed environmental impact statement ("EIS") prior to any major federal action that may have a significant effect on the environment.  42 U.S.C. § 4332(2)(C); *see* 40 C.F.R. §§ 1502.5 and 1508.3.

22.     When a federal agency is not certain whether an EIS is required, it must prepare an environmental assessment ("EA").  40 C.F.R. §§ 1501.3, 1501.4, and 1508.9.  If the EA concludes that the proposed project will have no significant impact on the human environment, the agency may issue a finding of no significant impact ("FONSI"), and proceed with the proposed action.  If the agency concludes that there may be significant impacts, then it must prepare an EIS.  40 C.F.R. § 1501.4.  Congress intended that requiring agencies to prepare these NEPA documents would help prevent or eliminate damage to the environment by focusing government and public attention on the environmental effects of proposed agency action.

23.     NEPA and its implementing regulations require that, when preparing an EA, agencies take a hard look at the potential impacts of a project, and ensure that, prior to issuing a FONSI, the EA convincingly concludes that no significant impacts will occur in order to forego preparation of an EIS.  An agency must supply a convincing statement of reasons why potential effects are insignificant.

24.     Likewise, agencies must take a hard look at the potential environmental impact of a project when preparing an EIS.

25.     NEPA's implementing regulations require federal agencies to supplement their EISs or EAs if "there are new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."  40 C.F.R. § 1502.9(c)(ii).

26.     In preparing either an EIS or an EA, federal agencies must consider a reasonable range of alternatives including appropriate mitigation measures.  42 U.S.C. § 4332(E);  40 C.F.R. § 1502.14.

27.     NEPA regulations require federal agencies like BLM to "[p]rovide public notice of NEPA-related hearings, public meetings, and the availability of environmental documents so as to

inform those persons and agencies who may be interested or affected."  40 C.F.R. § 1506.6(b)(1).

This requirement applies to all NEPA-related documents including EISs, EAs, and FONSIs.

28.   Moreover, NEPA regulations require BLM to "[m]ake diligent efforts to involve the

public in preparing and implementing their NEPA procedures."  40 C.F.R. § 1506.6(a).  Again,

this requirement is not limited to EISs, but applies equally to EAs and FONSIs.

## The Clean Water Act

29.   The purpose of the Clean Water Act is to "restore and maintain the chemical, physical,

and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).

30.   To achieve this purpose the Clean Water Act provides for the establishment of state water

quality standards.  33 U.S.C. § 1313.  These standards, such as limits on the sediment discharged

into streams from construction, are set to protect designated uses of the waters of the United

States.  The State of Wyoming has designated waters in the Atlantic Rim project area for a variety

of uses including for drinking water, fish and other aquatic life, recreation, wildlife and scenic

value.

31.   The Clean Water Act imposes an affirmative duty on federal agencies to ensure that any

permits or licenses that they issue comply with state water quality standards.  33 U.S.C. §

1341(a)(1).  Prior to approving the applications for permits to drill here, BLM had a duty under

the Clean Water Act to obtain a certification by the State of Wyoming that the APDs complied

with state water quality standards.  A waiver of the certification requirement is possible, but such

waiver still requires a specific request for the certification to the State of Wyoming.  *Id.*

## The Federal Land Policy and Management Act

32.   FLPMA directs the Secretary of the Interior and BLM to manage public lands "under

principles of multiple use and sustained yield."  43 U.S.C. § 1732(a);  *see also* 43 U.S.C. §

1701(a)(8) (listing purposes and values that should be considered in the management of public

lands).  FLPMA further requires that "[i]n managing the public lands the Secretary shall, by regulation or otherwise, take any action to prevent unnecessary or undue degradation of the lands."  43 U.S.C. § 1732(b).

33.  To assist in the management of public lands, FLPMA requires BLM to "develop, maintain, and, when appropriate, revise land use plans."  43 U.S.C. § 1712(a).  These land use plans, also known as resource management plans ("RMPs") project both the present and future use of the land.  43 U.S.C. § 1701(a)(2).  FLPMA prohibits BLM from taking actions inconsistent with the provisions of its RMPs.  43 U.S.C. § 1732(a) ("The Secretary shall manage the public lands . . . in accordance with the land use plans developed by him . . . .");  43 C.F.R. § 1610.5-3 ("All future resource management authorizations and actions . . . shall conform to the approved plan.").

34.  When necessary, RMPs may be amended, 43 C.F.R. § 1610.5-5.  To do so, BLM must prepare appropriate NEPA documentation, and submit the proposed amendment to public notice and comment in the same way as when the plan was originally being prepared.  43 C.F.R. § 1610.2.

**Oil and Gas Drilling**

35.   Resource Management Plans and their accompanying environmental impact statements establish Reasonably Foreseeable Development scenarios that set the level of oil and gas development for the area governed by the plan.

36.  After a land use plan is in place for an area, BLM will issue oil and gas leases consistent with the plan.  *See*  42 U.S.C. § 1732(a) ("The Secretary shall manage the public lands . . . in accordance with the land use plans developed by him . . . .");  43 C.F.R. § 1610.5-3 ("All future resource management authorizations and actions . . . shall conform to the approved plan.").  Each

BLM state office is required to conduct a competitive oil and gas lease sale at least four times a year if public lands are available for leasing. 43 C.F.R. § 3120.1-2.

37. After obtaining a lease, a company wishing to drill for oil or gas must submit an Application for Permit to Drill ("APD") and have it approved. 43 C.F.R. § 3162.3-1(c). A company may submit a single application for a permit to drill a single well or submit applications for several wells to be considered as part of a Plan of Development ("POD"). 43 C.F.R. § 3162-1(e). Upon receipt of an application for permit to drill, BLM shall post information related to the APD for public inspection at least 30 days before action to approve the APD. 43 C.F.R. § 3162.3-1(g). Within five working days of the conclusion of the 30-day notice period, BLM must approve the application, return it to the applicant stating the reasons for disapproval, or advise the applicant of reasons why final action will be delayed along with the date such final action can be expected. 43 C.F.R. § 3162.3-1(h). With an APD in hand, a company may immediately move forward with ground-disturbing activities.

## FACTS GIVING RISE TO PLAINTIFFS' CAUSES OF ACTION

### *BLM's Energy Development Policies*

38. Recently, BLM policies and actions have promoted energy development on public lands at the expense of their many other valuable uses such as for recreation and conservation. On May 18, 2001, President Bush issued an Executive Order 13212 requiring BLM and other federal agencies to take "Actions to Expedite Energy-Related Projects." The Executive Order set up a Task Force for Streamlining Energy Permitting. 66 Fed. Reg. 28357 (May 18, 2001).

39. In November 2001, BLM established a National Energy Office. BLM identified over 40 tasks representing "opportunities to expedite or expand energy supplies" from public lands. BLM Information Bulletin No. 2001-138 (August 15, 2001). BLM Information Bulletins and Memoranda are available at http://www.blm.gov/nhp/efoia/wo/woerr.html.

40.  BLM also identified several Resource Management Plans ("RMP") to accelerate and increase energy development on public lands.  These so-called "Time Sensitive Plans" included the Great Divide RMP which governs the Atlantic Rim project area.  BLM Instruction Memorandum No. 2002-081 (February 4, 2002).

41.  In 2004, BLM Headquarters directed land managers to proceed with leasing even while applicable land use plans were being revised, even if those plans were considering protecting the natural values of the same lands, and to require that any deferrals of leasing be supported by detailed explanations and documentation, submitted to the state and national directors of the BLM.  BLM, Instruction Memorandum 2004-110 (February 23, 2004).

42.  In 2005, BLM Headquarters directed all field offices to develop a NEPA alternative of higher well density and development beyond that actually proposed by an operator.  The directive advised BLM offices how to make the maximum number of projects fit into categorical exclusions to avoid NEPA altogether.  BLM, Instruction Memorandum 2005-247 (September 30, 2005).

43.  In June 2005, the Government Accountability Office ("GAO") issued a report finding that the increased volume of APDs and mandates to process them promptly resulted in more BLM staff resources being devoted to issuing permits and less to monitoring and enforcing compliance with environmental standards.  GAO, *Oil and Gas Development – Increased Permitting Activity Has Lessened BLM's Ability to Meet its Environmental Protection Responsibilities* (GAO-05-418).  According to GAO, the total number of oil and gas drilling permits approved by BLM more than tripled, from 1,803 to 6,399, during fiscal years 1999-2004.  GAO 17.  GAO explains that this "dramatic increase in oil and gas development on federal lands over the past 6 years has lessened BLM's ability to meet its environmental protection responsibilities."  GAO 5.

*Rawlins Resource Management Plan*

44.  As stated above, BLM identified the land use plan that governed the Atlantic Rim – the Great Divide RMP – for accelerated revision.  The existing Great Divide RMP provided for 1,440 oil and gas wells being drilled between about 1987 and 2007.  Industry plans for the area dramatically exceeded this amount.  BLM wanted to act quickly to allow for greater energy development in the area.  BLM Instruction Memorandum No. 2002-081 (February 4, 2002).

45.  On February 6, 2002, BLM issued a call for data for the revision of the Great Divide RMP.  Biodiversity Conservation Alliance and other plaintiffs submitted information to BLM in response to this request.

46.  On January 31, 2003, BLM issued a scoping notice to identify issues to be addressed in the Environmental Impact Statement for the revision of the Great Divide RMP, to become the Rawlins RMP.  Biodiversity Conservation Alliance and other plaintiffs submitted comments.

47.  On December 17, 2004, BLM released a Draft EIS for the Rawlins RMP.  Biodiversity Conservation Alliance and other plaintiffs submitted comments.

48.  BLM has not yet released a Final EIS nor a Proposed Rawlins RMP to complete the revision of the Great Divide Resource Management Plan.

*Atlantic Rim Natural Gas Field Development Project Record of Decision*

49.  Despite not having completed the revision to the RMP governing the Atlantic Rim area, BLM has moved forward to authorize extensive new coalbed methane development in the area.

50.  On December 12, 2005, BLM issued a Draft EIS for the Atlantic Rim Natural Gas Field Development Project ("Atlantic Rim Development Project").  The project provided for 2,000 new wells.  The project area sits within the Red Desert southwest of the town of Rawlins.  In addition to the new wells, the project includes new access roads and pipelines, totaling approximately 1,000 miles.

51.  On February 17, 2006, BCA and other plaintiffs submitted comments on the Draft EIS.

52.  In November 2006, BLM released a Final EIS ("FEIS") for the Atlantic Rim

Development Project.

53.  On January 4, 2007, BCA and other plaintiffs submitted comments on the FEIS.

54.  On May 21, 2007, BLM issued a Record of Decision ("ROD") approving Atlantic Rim

Development Project with its 2,000 new wells.  BLM deferred evaluation of site-specific impacts

of the project until site-specific proposals such as Applications for Permits to Drill were received.

55.  BCA and other plaintiffs filed an appeal of BLM's ROD and accompanying EIS before

the Interior Board of Land Appeals ("IBLA") on June 20, 2007.  The appeal requested a stay of

BLM's decision.

56.  The IBLA denied the stay request on September 5, 2007.

### BLM Approval of Applications for Permits to Drill within Atlantic Rim Project

57.  Meanwhile, BLM had received numerous applications for permits to drill in the Atlantic

Rim Development Project area.  No company could conduct surface disturbing activities within

the project area prior to BLM approval of an APD for the activity.

58.  On June 28, 2007, BLM approved 36 coalbed methane natural gas wells as requested by

Double Eagle Petroleum Company ("Double Eagle").  Fourteen of the wells were in Catalina Plan

of Development ("POD") A and 22 were in POD B.  BLM completed a Tiered EA, FONSI/

Decision Record ("DR") Form covering these wells along with 3 produced water reinjection wells

(all in POD B), plus the construction and/ or reconstruction of access roads for the purpose of

drilling the proposed wells.  Rather than conducting significant new analysis, BLM referred to the

earlier analysis that had been done as part of the Atlantic Rim Development Project EIS.

59.  BLM did not make the Catalina NEPA and decision documents available to the public

nor give any notice to the public prior to the agency's approval of the Catalina A & B PODs.  In

fact, as of September 24, 2007, BLM's Wyoming NEPA register indicated that the analysis was still "In Process."

60. On August 16, 2007, BLM approved 48 coalbed methane natural gas wells as requested by Anadarko E & P Company ("Anadarko"). Twenty-six of the wells were in Sun Dog POD A and 22 were in POD B. BLM completed a Tiered EA, FONSI/ DR Form covering these wells along with 3 produced water reinjection wells (2 in POD A and 1 in POD B), plus the construction and/ or reconstruction of access roads for the purpose of drilling the proposed wells.

61. BLM did not make the Sun Dog NEPA and decision documents available to the public prior to the agency's approval of the Sun Dog A & B PODs. BLM did not notify BCA of the availability of the completed documents despite the fact that BLM knew of BCA's intense interest in actions within the Atlantic Rim project area.

62. BCA and other plaintiffs first became aware of the APD approvals on September 7, 2007, after hearing reports of ground disturbing activities occurring within the Atlantic Rim project area.

63. BCA made a request to BLM's Rawlins office for the approved APDs in the Catalina and Sun Dog PODs, as well as the accompanying NEPA documents, on September 7, 2007. BLM provided part of the NEPA documents on September 10, 2007. BLM has not yet provided the complete set of documents.

64. Moreover, BCA and NRDC requested copies of all pending APDs tied to the Atlantic Rim Project ROD and EIS. BCA and NRDC also requested the accompanying NEPA documents. BLM told BCA on September 7, 2007, that there were 243 such APDs pending in addition to the 90 that had already been approved in the Catalina and Sun Dog PODs. BLM has not yet provided copies of these requested APDs or accompanying NEPA documents.

**FIRST CAUSE OF ACTION**
*Failure to Provide Public Participation as Required by NEPA*

65.   Plaintiffs incorporate herein by reference paragraphs 1-64 above.

66.   NEPA requires federal agencies to "[p]rovide public notice of NEPA-related hearings, public meetings, and the availability of environmental documents so as to inform those persons and agencies who may be interested or affected."  40 C.F.R. § 1506.6(b)(1).

67.   NEPA further directs federal agencies to "[m]ake diligent efforts to involve the public in preparing and implementing their NEPA procedures."  40 C.F.R. § 1506.6(a).  Federal NEPA regulations mandate that "public scrutiny [is] essential to implementing NEPA."  40 C.F.R. § 1500.1(b);  *see also* 40 C.F.R. § 1500.2(d) (federal agencies must "encourage and facilitate public involvement").  Federal regulations explicitly require federal agencies to include in all EAs a list of the agencies and persons consulted in preparing the document.  40 C.F.R. § 1508.9(b).

68.  BLM did not provide the public participation required by NEPA before approving the APDs for the Catalina A & B PODs and the Sun Dog A & B PODs.

69.   When BLM completed the Environmental Impact Statement for the Atlantic Rim Development Project, the agency explicitly deferred analysis of site-specific impacts of the project until site-specific proposals such as applications for permits to drill were received.  While BLM deferred part of the analysis required by NEPA until making APD decisions, the agency then did not involve the public when it approved the drilling permits.

70.  BLM prepared and approved EAs/ FONSIs for Catalina A & B PODs and Sun Dog A & B PODs without providing the documents to the public to comment.  Based on these EAs/ FONSIs, BLM approved APDs for 39 new wells in the Catalina PODs and 51 new wells in the Sun Dog PODs without any input for the interested public at all.  As a result, new wells are being drilled and new roads constructed now in the Catalina and Sun Dog PODs.

71.  As set forth above, BLM failed to provide the public participation required by NEPA before approving the applications for permits to drill for new wells and accompanying roads and pipelines in the Catalina and Sun Dog PODs.  Accordingly, the BLM has violated NEPA and its implementing regulations, 40 C.F.R. Part 1500, and has acted arbitrarily and capriciously and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(a).

## SECOND CAUSE OF ACTION
*Failure to Consider Alternative Mitigation Measures for Sage Grouse*

72.  Plaintiffs incorporate herein by reference paragraphs 1-71 above.

73.  NEPA requires federal agencies to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternate uses of available resources."  42 U.S.C. § 4332(E).  NEPA's implementing regulations specifically require consideration of mitigation measures in the alternatives analysis. 40 C.F.R. § 1508.25(b), 1502.14(f), and 1505.2(c).

74.  Neither the Catalina EA/FONSI/DR nor the previous Atlantic Rim Development Project EIS adequately analyzed a reasonable range of alternative mitigation measures for sage grouse. Numerous scientific studies have documented the harm to sage grouse resulting from oil and gas drilling.  Wells and the accompanying roads and other infrastructure disturb the nesting and breeding of sage grouse.  The U.S. Fish and Wildlife Service and plaintiffs in this case informed BLM of the inadequacy of its proposed mitigation measures and proposed alternative mitigation measures that would adequately protect sage grouse.  Despite evidence of the continuing harm and declining populations of sage grouse in Wyoming, and despite the comments and alternative measures provided by the U.S. Fish and Wildlife Service and others, BLM chose to consider and discuss only its original proposed set of mitigation measures, which have been proven ineffective in BLM's own experience with them in other projects.

75.  Similarly, neither the Sun Dog EA/FONSI/DR nor the previous Atlantic Rim Development Project EIS adequately analyzed a reasonable range of mitigation measures for sage grouse.

76.  Because BLM did not adequately analyze alternative mitigation measures for sage grouse, the agency has violated NEPA and its implementing regulations, 40 C.F.R. Part 1500, and the agency's approval of the Catalina and Sun Dog APDs was arbitrary, capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(a).

## THIRD CAUSE OF ACTION
*Failure to take a "Hard Look" at Environmental Impacts*

77.  Plaintiffs incorporate herein by reference paragraphs 1-76 above.

78.  When preparing an EA, federal agencies must "provide sufficient evidence and analysis for determining whether to prepare an EIS or a finding of no significant impact (FONSI)."  40 C.F.R. § 1508.9(a).

79.  Neither the Catalina EA/FONSI/DR, the Sun Dog EA/FONSI/DR, nor the previous Atlantic Rim Development Project EIS adequately discussed, analyzed, and evaluated several serious environmental consequences from the proposed action.  These consequences include the increased risk of methane seeps triggered by the new coalbed methane wells in the area, impacts to big game habitat and water quality, as well as impacts to the region's air quality.

80.  In addition, BLM failed to adequately analyze the cumulative impacts of the agency's actions when added to other past, present, and reasonably foreseeable future actions.  *See* 40 C.F.R. § 1508.25(c).

81.  Finally, BLM failed to conduct the site-specific analysis required by NEPA.  The agency did not conduct site-specific analysis when it completed the environmental impact statement for the Atlantic Rim Development Project.  BLM also did not complete adequate site-specific

analysis before it approved the applications for permits to drill for the Catalina and Sun Dog PODs.

82.   Because BLM did not take the hard look at environmental impacts NEPA requires, the agency has violated NEPA and its implementing regulations, 40 C.F.R. Part 1500, and the agency's approval of the Catalina and Sun Dog APDs was arbitrary, capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(a).

## FOURTH CAUSE OF ACTION
*Failure to Comply with Resource Management Plan as Required by FLPMA*

83.   Plaintiffs incorporate herein by reference paragraphs 1-82 above.

84.   The Federal Land Policy and Management Act prohibits BLM from taking actions inconsistent with the provisions of its Resource Management Plans.  42 U.S.C. § 1732(a);  43 C.F.R. § 1610.5-3.

85.   The Atlantic Rim Development Project is governed by the Great Divide Resource Management Plan approved in 1990.  BLM has begun, but not completed, a revision to this RMP.

86.   BLM's decisions approving the Atlantic Rim Development Project and the 90 wells in the Catalina and Sun Dog PODs is inconsistent with the amount of wells approved for the area in the Great Divide RMP.  BLM's decisions are also inconsistent with the wildlife management objectives of the Great Divide RMP.

87.   Because BLM's actions are inconsistent with the applicable Resource Management Plan, the agency's actions violated FLPMA and its implementing regulations and as such are arbitrary, capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(a).

## FIFTH CAUSE OF ACTION
*Violation of the Clean Water Act*

88.   Plaintiffs incorporate herein by reference paragraphs 1-87 above.

89.  Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).

90.  In order to secure clean waters for the Nation, the Clean Water Act requires states to set water quality standards.  33 U.S.C. § 1313.

91.  The Clean Water Act prohibits federal agencies from issuing permits or licenses, such as the applications for permits to drill challenged here, without a certification that the permit complies with state water quality standards.  33 U.S.C. § 1341(a)(1).

92.  BLM has provided no evidence that any steps were taken to comply with the Clean Water Act's certification requirements.  By issuing 90 APDs for the Sun Dog and Catalina areas without ensuring their compliance with state water quality standards, BLM violated the Clean Water Act and therefore the agency's action is arbitrary, capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(a).

## PRAYER FOR RELIEF

Wherefore, plaintiffs respectfully pray that this Court enter judgment in their favor and against defendants Dirk Kempthorne, the Department of the Interior and the Bureau of Land Management and that the Court:

(1)    Declare that defendants have violated NEPA, FLPMA, and the Clean Water Act, and applicable implementing regulations as set forth above; and

(2)    Award injunctive relief directing defendants to rescind the applications for permits to drill approved for Catalina A & B plans of development and the Sun Dog A & B plans of development until the defendant agency BLM corrects its violations of NEPA, FLPMA and the Clean Water Act; and

(3)    Award injunctive relief prohibiting defendants from approving any further applications for permits to drill, or other ground-disturbing activity, tied to the Atlantic Rim

Development Project EIS until the defendant agency BLM corrects its violations of NEPA,

FLPMA and the Clean Water Act; and

      (4)     Retain jurisdiction of this action to ensure compliance with its decree; and

      (5)     Award plaintiffs the costs they have incurred in pursuing this action, including

attorneys' fees, as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other

applicable provisions; and

      (6)     Grant such other and further relief as is proper.

Respectfully submitted,


                                          /sb
                              Sharon Buccino (D.C. Bar # 432073)
                              Aaron Bloom
                              Natural Resources Defense Council
                              1200 New York Ave., NW. Suite 400
                              Washington, D.C. 20005
                              (202) 289-6868

                              Attorneys for Plaintiffs


Date: September 25, 2007

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Natural Resources Defense Council<br>Biodiversity Conservation Alliance<br>Wyoming Outdoor Council<br>Western Watersheds Project<br>Wyoming Wilderness Association | Dirk Kempthorne, Secretary of the Interior<br>US Department of the Interior<br>US Bureau of Land Management |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c) ATTORNEYS**
Sharon Buccino
Natural Resources Defense Council
1200 New York Avenue, NW, Suite 400
Washington, DC 20005
(202) 289-6868 phone

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ☐ 1. U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☑ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

☐ **A. Antitrust**

- ☐ 410 Antitrust

☐ **B. Personal Injury/Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff))
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☑ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☑ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other)** OR ☐ **F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ **G.** *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ **H.** *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **I.** *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **J.** *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ **K.** *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ **L.** *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ **M.** *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ **N.** *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 USC § 706(2)(a) (Challenge to final agency action under Administrative Procedures Act)

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   DEMAND $   Check YES only if demanded in complaint   JURY DEMAND: ☐ YES  ☑ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES  ☑ NO   If yes, please complete related case form.

DATE 9-25-07   SIGNATURE OF ATTORNEY OF RECORD   *Shan Breie/CDB*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.