IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL<br>1200 New York Avenue, NW, Suite 400<br>Washington, DC  20005,          *et al.*<br><br>         Plaintiffs,<br><br>                v.<br><br>DIRK KEMPTHORNE, in his official capacity<br>As the Secretary of the United States<br>Department of the Interior<br>1849 C Street, NW<br>Washington, DC  20240,          *et al.*<br><br>         Defendants.<br>_____<br>ANADARKO PETROLEUM CORPORATION,<br>WARREN RESOURCES, INC., and DOUBLE<br>EAGLE PETROLEUM CO.,<br><br>Defendant-Intervenors,<br><br>STATE OF WYOMING,<br><br>Defendant-Intervenor. | Civ. No. 07-1709 (RJL) |

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS
NO GENUINE ISSUE**

Pursuant to Local Civil Rule 7(h), Plaintiffs submit this statement of material facts as to which they contend there is no genuine issue.

1.     The Atlantic Rim area of Wyoming's Red Desert is a place of stunning beauty with rolling hills, canyons, dune fields and diverse sagebrush communities. Declaration of Erik Molvar, ¶ 3, attached as Exh. A. to Plaintiffs' Motion for Preliminary Injunction.

1

2. On May 21, 2007, BLM issued the Record of Decision ("ROD") and accompanying Final Environmental Impact Statement ("FEIS") approving the Atlantic Rim Natural Gas Development Project. 72 Fed. Reg. 28518 (May 21, 2007). The ROD authorized up to 2,000 new wells. AR 4796.

3. The agency did not include site-specific analysis of the specific wells or accompanying infrastructure in the project FEIS. AR 4483, AR 4561, AR 4570, AR 4578, AR 4580, AR 4588.

4. The large area covered by the Atlantic Rim project has provided critical habitat and migration routes for numerous wildlife species, including sage grouse, elk, mule deer, and pronghorn antelope. See, e.g., AR 2391-2394; AR 10322-10327.

5. On June 28, 2007, BLM approved the first plans of development submitted by Double Eagle in the Catalina unit for 39 new wells and the roads, pipelines and other infrastructure to go with them. AR 73502. Fourteen of the wells were in Catalina Plan of Development ("POD") A and 25 were in POD B. AR 73492.

6. On August 16, 2007, BLM approved plans of development submitted by Anadarko in the Sun Dog unit for 51 new wells and the roads, pipelines and other infrastructure to go with them. AR 74073. Twenty-eight of the wells were in Sun Dog POD A and 23 were in POD B. AR 74063.

7. Although BLM knew of the interest of the Biodiversity Conservation Alliance ("BCA") and other plaintiffs in the Atlantic Rim Development Project, the Agency did not involve BCA or the public in the environmental review process for either the Catalina A and B PODs or the Sun Dog A and B PODs. Second Molvar Decl., at ¶¶ 20, 21, attached as Exh. 1 to Plaintiffs' Motion for Summary Judgment.

8.      On October 23, 2007, BLM approved three additional Plans of Development (C, D, and E) in the Sun Dog unit. AR 75029, 75185. These PODs contained 48 new wells. AR 75019, 75173.

### *Air Quality*

9.      Ozone forms through the chemical reaction of nitrogen oxides ("NOx") and volatile organic compound ("VOC") emissions in the presence of sunlight. AR 2328.

10.     Breathing ground level ozone can cause a variety of health problems including chest pain, coughing, throat irritation, and congestion. Epidemiologic studies have linked ground level ozone to total mortality, cardiovascular mortality and respiratory mortality. USEPA, Fact Sheet: Ground-Level Ozone Health and Environment, available at http://www.epa.gov/air/ozonepollution/health.html.

11.     Increased levels of ozone can damage the leaves of trees and other plants, degrading the appearance of vegetation in recreation areas. Id.

12.     When BLM approved the Atlantic Rim project ROD/ FEIS, the federal and Wyoming air quality standard for ozone was 157 ug/m3. AR 2181. In March 2008, USEPA tightened the ozone standard to 147 ug/m3. 73 Fed. Reg. 16436 (March 27, 2008). The agency concluded that the previous standard was not low enough to protect public health. Id.

13.     A variety of activities approved by BLM as part of the Atlantic Rim project produce NOx and VOC emissions. AR 2327. During well construction, drilling rigs and vehicle engine exhaust would produce NOx and VOC emissions. Id. During production, compressor stations, dehydrator heaters, dehydrator gas processing

operations, and diesel combustion in haul trucks would produce NOx and VOC emissions.  AR 2661.

14.   Combining production and construction emissions, BLM estimates that the Atlantic Rim project would produce 674.88 tons per year of NOx and 5,869.44 tons per year of VOCs.  AR 2663.

15.   The FEIS does not contain any controls to limit the project's impact on ozone concentrations.  AR 2335, 4839.

16.   The Conditions of Approval for the Catalina and Sun Dog plans of development also do not contain mitigation measures to limit the impacts of the approved exploration and production on ozone concentrations.  AR 73506-19, AR 74074-99, AR 75034-50, AR 75190-210.

17.   For applications involving multiple sources of ozone precursor chemicals, EPA's "Guideline on Air Quality Models" recommends a photochemical grid model, the Community Multiscale Air Quality model (CMAQ).  40 C.F.R. Part 51, App. W, as revised (70 Fed. Reg. 68,218 (Nov. 9, 2005)) (hereafter "EPA Guideline") at ¶ 5.2.1.a.

18.   The Atlantic Rim project involves multiple sources of NOx and VOCs. AR 2327, 2660, 2661.

19.   BLM used the Scheffe method of instead of the CMAQ model without demonstrating that the Scheffe method complies with the EPA Guideline.  AR 2328, AR 2687, AR 2703.

20.   In a July 28, 2006 letter, Dr. Scheffe noted that his method "was deemed 'not adequate' in 1989 [and is] even less adequate today."  AR 9881.  In the letter, Dr. Scheffe wrote that the tables he developed in 1988 "never achieved a level of EPA

4

>Id.

21.    Plaintiff BCA criticized BLM's reliance on the Scheffe model in comments on the Atlantic Rim Draft EIS dated February 17, 2006.  AR 70538, 70599.

22.    BCA and other plaintiffs criticized BLM's reliance on the Scheffe model in comments on other projects being considered by Wyoming BLM.  These comments included the protest of the Jack Morrow Hills Coordinated Activity Plan dated August 2004 (AR 86126);  comments on the draft Rawlins Resource Management Plan dated March 11, 2005 (AR 86150);   comments on the Jonah Infill Draft Environmental Impact Statement dated April 9, 2005 (AR 86169);  comments by plaintiff Wyoming Outdoor Council on the Jonah Infill Air Quality Impact Analysis dated September 26, 2005 (AR 86203);  comments by Vickie Stamper on the Jonah Infill Air Quality Impact Analysis dated October 5, 2005 (AR 86230);  comments by Robert Yuhnke on the Jonah Infill Air Quality Impact Analysis dated October 7, 2005 (AR 86264); and Yuhnke comments on the Rawlins Resource Management Plan Air Quality Impacts  (AR 86286).

23.    BLM recognized as early as August 2006 that the Scheffe method was obsolete.  AR  8666, AR 8667.

24.    The Scheffe method has not been scientifically peer-reviewed.  AR 9881.

25.    BLM identified the background level for ozone in the Atlantic Rim project area according to the 8-hour average as 147 ug/m3.  AR 2181.

26.    BLM's modeled "Maximum Predicted" ozone impact for the project is 16.1 ug/m3.  AR 2332.

27. BLM used the hourly average of 75.2 ug/m3 instead of the 8-hour average background level to determine the project's total predicted impact on ground level ozone. AR 2331.

28. BLM combined the 75.2 ug/m3 measurement with the "maximum predicted impact" of 16.1 ug/m3 due to the Atlantic Rim project, to calculate a "total predicted impact" of 91.3 ug/m3.  AR 2332.

29. Wyoming officials have issued several health alerts in rural gas-drilling areas due to a substantial buildup of ozone.  Wyoming Department of Environmental Quality health advisories, available at ttp://deq.state.wy.us/out/outreachpressrelease.htm.

### *Methane Leaks*

30. In a BLM document dated February 6, 2007, a BLM Petroleum Engineer, Jon N. Dull, evaluated known methane gas seeps in the Atlantic Rim area and wrote that "it is likely that future CBNG [coal bed natural gas] development may cause increased quantities of gas to be emitted from the known seeps.  It is also possible that there exist other seeps within the ARPA that are yet to be discovered."  AR 8805.

31. BLM's engineer Dull identified the following "fairly severe safety and environmental concerns" from the increase in methane gas seeps:  (1) Potential damage to the atmosphere; (2) Potential damage to human and animal safety; and (3) Potential damage to vegetation.  AR 8803, 8805.

32. None of the NEPA documents for the project - final EIS, draft EIS, and ROD – mention the BLM document written by Dull. AR 1436-4881.

33. Comments from EPA and Plaintiffs raised concerns over the project's impacts from methane seeps, including global warming impacts.  AR 3481, AR 8840.

34. Testing of new and previously existing methane springs in the Atlantic Rim project area by Walter Merschat, the results of which were brought to BLM's attention, found "exceptionally high methane concentrations." AR 9450. See also AR 9447, AR 79100.

35. BLM issued its Record of Decision without any errata discussing the methane concerns that the public had brought to the agency's attention. AR 4817-4819.

### *Sage Grouse*

36. BLM has listed the sage grouse as a "Sensitive Species." AR 4405.

37. Under BLM's Manual, 6840 - Special Status Species Management, BLM-authorized actions may not "contribute to the need for [a sensitive] species to become listed as a threatened or endangered species." AR 5237-38.

38. Nearly half all sage grouse habitat is on BLM-managed land. AR 5497.

39. Sage grouse are prevalent throughout the Atlantic Rim project area. AR 2394.

40. Sage grouse will be significantly harmed by this project, even after the application of mitigation measures. AR 2092, 2404.

41. The project's mitigation measures for sage grouse include a 0.25-mile no surface disturbance zone around sage grouse leks and seasonal restrictions on surface disturbing activities within two miles of a lek (to protect nesting habitat). AR 2626.

42. In its January 26, 2006 comments on the draft EIS, and in its January 5, 2007 comments on the final EIS, the United States Fish and Wildlife Service ("the Service") raised a concern that the anticipated impacts of the project might lead to the

need to list sage grouse as endangered or threatened under the Endangered Species Act ("ESA"). AR 3255, AR 10134-10135.

43. In its January 26, 2006 letter, the Service also stated that it "does not support a 0.25 mile protective buffer around sage-grouse leks as a mitigation measure, nor do we support a 2-mile [seasonal] buffer to protect nesting habitat" and that it "strongly recommends minimum protection measures as described by Connelly et al. (2000)." AR 3256.

44. In a 2000 Memorandum of Understanding between BLM and the Western Association of Fish and Wildlife Agencies, U.S. Forest Service, and U.S. Fish and Wildlife Service, the BLM committed specifically to consider the Connelly guidelines, referenced in the Service's letter, in its planning process. AR 86104.

45. The Atlantic Rim FEIS does not cite the Connelly guidelines. AR 2516-2544.

### *Big Game*

46. A zone from 0.6 to 1.2 miles surrounding an area of surface disturbance such as a well pad tends not to be used by elk due to human activity. AR 2389.

47. BLM issued a <u>Notice of Intent to Prepare an Environmental Impact Statement for the Continental Divide-Creston Natural Gas Project</u> on March 3, 2006. 71 Fed. Reg. 10989-01.

48. BLM issued a <u>Notice of Intent to Prepare an Environmental Impact Statement – Hiawatha Regional Energy Development Project</u> on September 6, 2006. 71 Fed. Reg. 52571-01.

49.     BLM did not consider either the approximately 9,000 new wells proposed as part of the Continental Divide-Creston project or the 4,208 new wells being considered as part of the Hiawatha project in its list of Reasonably Foreseeable Future Actions.  AR 2484-85.

### *Public Participation*

50.     BLM posted notices of applications for permits to drill in the Atlantic Rim project area in September 2005 well over a year before the agency issued its ROD/ FEIS authorizing the project.  Exh. V attached to Plaintiffs' Reply to Opposition to Motion for Preliminary Injunction.

51.     The notices that BLM posted for public notice pursuant to 43 C.F.R. 3162.3-1(g) did not contain the actual applications for permits to drill that it had received.  Exh. V attached to Plaintiffs' Reply to Opposition to Motion for Preliminary Injunction.

52.     BLM did not provide draft Environmental Assessments to plaintiffs or the public prior to approving the 39 wells in the Catalina A & B Plans of Developments.  Declaration of Erik Molvar ¶ 15, attached as Exh. A. to Plaintiffs' Motion for Preliminary Injunction.

53.     BLM did not provide draft Environmental Assessments to plaintiffs or the public prior to approving the 51 wells in the Sun Dog A & B Plans of Development.  Id.

54.     BLM provided counsel for plaintiffs draft Environmental Assessments seven days before approving the 48 new wells in the Sun Dog C, D, and E Plans of Development.  AR 79066-79067.

55.     BLM did not include site-specific analysis of the wells in the Atlantic Rim FEIS.  AR 4483, 4561, 4570, 4578, 4580, 4588.

56. Information related to the site-specific environmental impacts of the applications for permits to drill and the conditions of approval to address the impacts were made available to the public for the first time in BLM's Environmental Assessments that accompanied each plan of development approval. See, e.g., AR 73492-73501.

Respectfully submitted,

    /s/  Sharon Buccino
Sharon Buccino (DC Bar # 432073)
Ben Longstreth (DC Bar # 974015)
Aaron Bloom
Natural Resources Defense Council
1200 New York Ave., NW, Suite 400
Washington, DC  20005
T:  202-289-6868
F:  202-289-1060
sbuccino@nrdc.org

*Counsel for Plaintiffs*

Dated:  April 28, 2008