IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, BIODIVERSITY CONSERVATION ALLIANCE, WYOMING OUTDOOR COUNCIL, WESTERN WATERSHEDS PROJECT, and WYOMING WILDERNESS ASSOCIATION | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civ. No. 07-cv-01709-RJL |
| v. | ) ) | |
| DIRK KEMPTHORNE, in his official capacity as the Secretary of the United States Department of Interior, U. S. DEPARTMENT OF INTERIOR, and U. S. BUREAU OF LAND MANAGEMENT | ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| STATE OF WYOMING, ANADARKO PETROLEUM COPRORATION, WARREN RESOURCES, INC., and DOUBLE EAGLE PETROLEUM CO. | ) ) ) ) ) | |
| Defendant-Intervenors. | ) ) | |

## DEFENDANT-INTERVENOR STATE OF WYOMING'S RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS

Pursuant to LCvR 7(h), Defendant-Intervenor State of Wyoming ("Wyoming") hereby responds to PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE (hereinafter "Pls.' Stmt. of Facts").

**A.      Objection to Extra-Record Documents and Citations**

Plaintiffs impermissibly seek to submit new evidence to this Court that was not in front of the agency at the time of its decision.  In Pls.' Stmt. of Facts ¶¶ 1, 7, 10, 11, 29, 50-53, Plaintiffs do not cite any portion of the administrative record to support the alleged facts.  They instead cite to material outside the administrative record, which improperly expands the administrative record.  *See Bismullah v. Gates*, 514 F.3d 1291, 1300 (D.C. Cir. 2008) (stating that in an administrative review case, the Supreme Court of the United States "has made clear that [Courts] have no license to 'create' a record consisting of more than the agency itself had before it"); *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 793 (D.C. Cir. 1984) (finding that the record is limited "to that information before the Secretary *at the time of his decision* . . . thus excluding *ex post* supplementation of the record by either side," and further stipulating that "[i]f the parties wish to contest the merits of the case by referring or submitting to the District Court any material that does not appear in the . . . administrative record, they may do so only by joint stipulation").

Plaintiffs have not moved this Court to supplement the record, and beyond a footnote in their MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, have not offered any explanation as to why this Court should consider their extra-record documents in the challenged action.  *See IMS, P.C. v. Alvarez*, 129 F.3d 618, 624 (D.C. Cir. 1997) (stating that the Court can only consider information that falls outside the administrative record when Plaintiffs demonstrate that "the agency failed to examine all relevant factors or to adequately explain its grounds for decision, or that the agency acted

in bad faith or engaged in improper behavior in reaching its decision"). Wyoming thus

objects to and denies the alleged facts in Pls.' Stmt. of Facts ¶¶ 1, 7, 10, 11, 29, 50-53.

**B.     Wyoming's Response to Plaintiffs' Statement of Facts**

**1. Plaintiffs' Alleged Material Fact:**  The Atlantic Rim area of Wyoming's Red Desert is a place of stunning beauty with rolling hills, canyons, dune fields and diverse sagebrush communities. Declaration of Erik Molvar, ¶ 3, attached as Exh. A. to Plaintiffs' Motion for Preliminary Injunction.

> **Response:**  Denied.  Plaintiffs do not cite any portion of the administrative record
>
> to support the alleged facts in Pls.' Stmt. of Facts ¶ 1.  They instead cite to
>
> material outside the administrative record, which improperly expands the
>
> administrative record. *See* Section A of this Response.  No response is thus
>
> required.  To the extent that a response is required, Wyoming denies the alleged
>
> facts.

**2. Plaintiffs' Alleged Material Fact:**  On May 21, 2007, BLM issued the Record of Decision ("ROD") and accompanying Final Environmental Impact Statement ("FEIS") approving the Atlantic Rim Natural Gas Development Project. 72 Fed. Reg. 28518 (May 21, 2007). The ROD authorized up to 2,000 new wells. AR 4796.

> **Response:**  Admitted in part.  Denied in part.  Wyoming admits that the Atlantic
>
> Rim final environmental impact statement ("EIS") was released to the public and
>
> a notice of availability ("NOA") was published in the Federal Register on
>
> December 1, 2006.  (AR 9564-65).  On May 21, 2007, the BLM published in the
>
> Federal Register a NOA of the record of decision ("ROD") "for the Final
>
> Environmental Impact Statement for the Atlantic Rim Natural gas Field
>
> Development Project, Carbon County, Wyoming."  (AR 9574).  The BLM's
>
> preferred alternative in the ROD "involves drilling of approximately 2,000 gas
>
> wells within the ARPA to recover energy resources, while limiting total new

surface disturbance from the drilling program across the ARPA (federal, state and fee minerals) to a maximum of 7,600 acres, at any given time, and a 6.5-acre/well site short-term (less than 6 years) disturbance goal."  (AR 4796).  To the extent that the Plaintiffs have paraphrased and misrepresented the record to which they cite, the alleged material fact is denied.

**3.  Plaintiffs' Alleged Material Fact:**  The agency did not include site-specific analysis of the specific wells or accompanying infrastructure in the project FEIS. AR 4483, AR 4561, AR 4570, AR 4578, AR 4580, AR 4588.

**Response:**  Denied.  Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 3 as unsupported by the record.  Even though development of site-specific mitigation plans will take place after the ROD is issued, the criteria for the plans and the specific mitigation measures that the BLM will require are discussed in detail in both the final EIS and ROD.  (AR 3081-96, AR 3149-62, 4799-4800, 4813, 4835-55).

**4.  Plaintiffs' Alleged Material Fact:**  The large area covered by the Atlantic Rim project has provided critical habitat and migration routes for numerous wildlife species, including sage grouse, elk, mule deer, and pronghorn antelope. See, e.g., AR 2391-2394; AR 10322-10327.

**Response:**  Admitted in part.  Denied in part.  Wyoming admits that within the Atlantic Rim Project Area ("ARPA"), which includes 270,000 acres of federal, state, and private surface ownership, "a total of 338 species of wildlife have been recorded or may occur either as residents or migrants."  (AR 2248).  Wildlife habitat within the ARPA includes crucial winter range for big game such as pronghorn antelope, mule deer, and elk, and nesting and early brood-rearing habitat for the greater sage-grouse.  (AR 2391-97).  To the extent that the

Plaintiffs have paraphrased and misrepresented the record to which they cite, the

alleged material fact is denied.

**5.  Plaintiffs' Alleged Material Fact:**  On June 28, 2007, BLM approved the first plans of development submitted by Double Eagle in the Catalina unit for 39 new wells and the roads, pipelines and other infrastructure to go with them. AR 73502. Fourteen of the wells were in Catalina Plan of Development ("POD") A and 25 were in POD B. AR 73492.

      **Response:**  Admitted.

**6.  Plaintiffs' Alleged Material Fact:**  On August 16, 2007, BLM approved plans of development submitted by Anadarko in the Sun Dog unit for 51 new wells and the roads, pipelines and other infrastructure to go with them. AR 74073. Twenty-eight of the wells were in Sun Dog POD A and 23 were in POD B. AR 74063.

      **Response:**  Admitted.

**7.  Plaintiffs' Alleged Material Fact:**  Although BLM knew of the interest of the Biodiversity Conservation Alliance ("BCA") and other plaintiffs in the Atlantic Rim Development Project, the Agency did not involve BCA or the public in the environmental review process for either the Catalina A and B PODs or the Sun Dog A and B PODs. Second Molvar Decl., at ¶¶ 20, 21, attached as Exh. 1 to Plaintiffs' Motion for Summary Judgment.

      **Response:**  Denied.  Plaintiffs do not cite any portion of the administrative record

to support the alleged facts in Pls.' Stmt. of Facts ¶ 7.  They instead cite to

material outside the administrative record, which improperly expands the

administrative record. *See* Section A of this Response.  No response is thus

required.  To the extent that a response is required, Wyoming denies the alleged

facts.

**8.  Plaintiffs' Alleged Material Fact:**  On October 23, 2007, BLM approved three additional Plans of Development (C, D, and E) in the Sun Dog unit. AR 75029, 75185. These PODs contained 48 new wells. AR 75019, 75173.

      **Response:**  Admitted.

**9.  Plaintiffs' Alleged Material Fact:**  Ozone forms through the chemical reaction of nitrogen oxides ("NOx") and volatile organic compound ("VOC") emissions in the presence of sunlight. AR 2328.

**Response:**  Admitted.

**10.  Plaintiffs' Alleged Material Fact:** Breathing ground level ozone can cause a variety of health problems including chest pain, coughing, throat irritation, and congestion. Epidemiologic studies have linked ground level ozone to total mortality, cardiovascular mortality and respiratory mortality. USEPA, <u>Fact Sheet: Ground-Level Ozone Health and Environment</u>, available at <u>http://www.epa.gov/air/ozonepollution/health.html</u>.

> **Response:**  Denied.  Plaintiffs do not cite any portion of the administrative record to support the alleged facts in Pls.' Stmt. of Facts ¶ 10.  They instead cite to material outside the administrative record, which improperly expands the administrative record. *See* Section A of this Response.  No response is thus required.  To the extent that a response is required, Wyoming denies the alleged facts.

**11.  Plaintiffs' Alleged Material Fact:** Increased levels of ozone can damage the leaves of trees and other plants, degrading the appearance of vegetation in recreation areas. USEPA, <u>Fact Sheet: Ground-Level Ozone Health and Environment</u>, available at <u>http://www.epa.gov/air/ozonepollution/health.html</u>.

> **Response:**  Denied.  Plaintiffs do not cite any portion of the administrative record to support the alleged facts in Pls.' Stmt. of Facts ¶ 11.  They instead cite to material outside the administrative record, which improperly expands the administrative record. *See* Section A of this Response.  No response is thus required.  To the extent that a response is required, Wyoming denies the alleged facts.

**12.  Plaintiffs' Alleged Material Fact:** When BLM approved the Atlantic Rim project ROD/ FEIS, the federal and Wyoming air quality standard for ozone was 157 ug/m3. AR 2181. In March 2008, USEPA tightened the ozone standard to 147 ug/m3. 73 Fed. Reg. 16436 (March 27, 2008). The agency concluded that the previous standard was not low enough to protect public health. <u>Id</u>.

> **Response:**  Admitted in part.  Denied in part.  Wyoming admits that when the BLM approved the Atlantic Rim final EIS and ROD, the 8-hour National and

Wyoming Ambient Air Quality Standards for ozone were 157 ug/m$^3$ (0.080 parts per million).   (AR 2181).   Wyoming also admits that in March 2008, the Environmental Protection Agency ("EPA") revised the national 8-hour standard to 147 ug/m$^3$ (0.075 parts per million).   71 Fed. Reg. 16,436 (Mar. 27, 2008). Wyoming denies that "the previous standard was not low enough to protect public health."  The EPA stated that it was revising the level of the 8-hour standard "to provide increased protection for children and other 'at risk' populations."  (*Id*.).

**13.  Plaintiffs' Alleged Material Fact:** A variety of activities approved by BLM as part of the Atlantic Rim project produce NOx and VOC emissions. AR 2327. During well construction, drilling rigs and vehicle engine exhaust would produce NOx and VOC emissions. Id. During production, compressor stations, dehydrator heaters, dehydrator gas processing  operations, and diesel combustion in haul trucks would produce NOx and VOC emissions. AR 2661.

**Response:**  Admitted.

**14.   Plaintiffs' Alleged Material Fact:** Combining production and construction emissions, BLM estimates that the Atlantic Rim project would produce 674.88 tons per year of NOx and 5,869.44 tons per year of VOCs. AR 2663.

**Response:**   Admitted in part.  Denied in part.  For its air quality analysis, the BLM relied in part on a document entitled *Air Quality Technical Support Document, Atlantic Rim Natural Gas Project and the Seminoe Road Gas Development Project, Wyoming* ("Air Quality Report") prepared by TRC Environmental Corporation in July 2006.   (AR 2635-3049; *see* AR 2325). Wyoming admits that the report estimated that under the *proposed action* by the operators (not the agency's preferred alternative), construction and production in the ARPA would produce 674.88 tons per year of NOx and 5,869.44 tons per year of VOCs.  (AR 2663).  To the extent that the Plaintiffs have paraphrased and misrepresented the record to which they cite, the alleged material fact is denied.

**15. Plaintiffs' Alleged Material Fact:** The FEIS does not contain any controls to limit the project's impact on ozone concentrations. AR 2335, 4839.

> **Response:** Denied. Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 15
>
> as unsupported by the record. The BLM noted in the final EIS the adverse effects
>
> of increased levels of ozone and implemented a monitoring plan:
>
>> In cooperation with WDEQ [Wyoming Department of Environmental Quality], the Operators would finance and operate additional air quality concentration monitoring, including $O_3$ [ozone], in the RFO [Rawlins Field Office] area. BLM would work cooperatively with WDEQ, EPA [Environmental Protection Agency] and the operators to maintain and enhance concentration monitoring in the RFO area, including monitoring required to represent impacts due to emission from the Atlantic Rim field.
>
> (AR 2334). The BLM also adopted mitigation measures for air quality impacts
>
> related to ozone: "If in the future air monitoring were to show $O_3$ [ozone]
>
> exceedances that were attributable at least in part to sources in the Atlantic Rim
>
> field, BLM would consult with WDEQ and EPA to determine whether adaptive
>
> management would be needed to mitigate impacts." (AR 2335).

**16. Plaintiffs' Alleged Material Fact:** The Conditions of Approval for the Catalina and Sun Dog plans of development also do not contain mitigation measures to limit the impacts of the approved exploration and production on ozone concentrations. AR 73506-19, AR 74074-99, AR 75034-50, AR 75190-210.

> **Response:** Denied. Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 16
>
> as unsupported by the record. The environmental assessments ("EAs") and
>
> findings of no significant impact ("FONSIs") for the Catalina and Sun Dog Plans
>
> of Development ("PODs") are tiered to the final EIS. (AR 73492, 74063, 75019,
>
> 75173). Because these EAs are tiered to the final EIS, and the final EIS contains
>
> mitigation measures to limit the project's impact on ozone concentrations (*see*
>
> Wyoming's Response to Pls.' Stmt. of Facts ¶ 15), the EAs also contain

mitigation measures to limit the project's impact on ozone concentrations for the

site-specific PODs.  (AR 2334-35).

**17.  Plaintiffs' Alleged Material Fact:**  For applications involving multiple sources of ozone precursor chemicals, EPA's "Guideline on Air Quality Models" recommends a photochemical grid model, the Community Multiscale Air Quality model (CMAQ). 40 C.F.R. Part 51, App. W, as revised (70 Fed. Reg. 68,218 (Nov. 9, 2005)) (hereafter "EPA Guideline") at ¶ 5.2.1.a.

> **Response:**  Admitted in part.  Denied in part.  Wyoming admits that the EPA's
>
> "Guideline on Air Quality Models" *encourages* "control agencies with
>
> jurisdiction over areas with ozone problems" to "use photochemical grid models,
>
> *such as* the Models-3/Community Multiscale Air Quality (CMAQ) modeling
>
> system, to evaluate the relationship between precursor species and ozone" for
>
> multi-source applications.  40 C.F.R. Pt. 51, App. W, § 5.2.1(a) (Dec. 9, 2005)
>
> (emphasis added).  "The Guideline recommends air quality modeling techniques
>
> that should be applied to State Implementation Plan (SIP) revisions for existing
>
> sources and new source reviews (NSR) . . . ."  (*Id*.).  *Id*. § 1.0(a).  To the extent
>
> that the Plaintiffs have paraphrased and misrepresented the record to which they
>
> cite, the alleged material fact is denied.

**18.  Plaintiffs' Alleged Material Fact:**  The Atlantic Rim project involves multiple sources of NOx and VOCs. AR 2327, 2660, 2661.

> **Response:**  Admitted in part.  Denied in part.  Wyoming admits that in the final
>
> EIS, the BLM stated that "[a]ir quality impacts from the project would occur from
>
> pollutants emitted during construction (due to potential surface disturbance by
>
> earth-moving equipment, vehicle traffic fugitive dust, well completion and
>
> testing, and drilling rig and vehicle engine exhaust) and production (natural gas
>
> well-site production equipment, reciprocating pipeline compression engine

exhausts, vehicle traffic engine exhaust, and fugitive dust)." (AR 2327).

Pollutants emitted from these activities include $NO_X$ and VOCs. (*Id.*; *see also*

2660-61). To the extent that the Plaintiffs have paraphrased and misrepresented

the record to which they cite, the alleged material fact is denied.

**19. Plaintiffs' Alleged Material Fact:** BLM used the Scheffe method of [sic] instead of the CMAQ model without demonstrating that the Scheffe method complies with the EPA Guideline. AR 2328, AR 2687, AR 2703.

> **Response:** Admitted in part. Denied in part. Wyoming admits that the BLM
>
> used the Scheffe Point Source Screening Tables to analyze ozone impacts in the
>
> ARPA but denies that the BLM was required to demonstrate that this model
>
> complied with the EPA's "Guideline on Air quality Models." (AR 2325-35,
>
> 2686-88, 8666). Additionally, at the time the ozone analysis was being performed
>
> for the ARPA, the Scheffe model "was considered by the inter-agency air quality
>
> team to be a reasonable tool and an acceptable ozone method," and was used by
>
> the BLM to analyze ozone impacts for several other projects that were involved in
>
> the NEPA process. (AR 2334, 8666).

**20. Plaintiffs' Alleged Material Fact:** In a July 28, 2006 letter, Dr. Scheffe noted that his method "was deemed 'not adequate' in 1989 [and is] even less adequate today." AR 9881. In the letter, Dr. Scheffe wrote that the tables he developed in 1988 "never achieved a level of EPA [sic] Id.

> **Response:** Admitted in part. Denied in part. Wyoming admits that Plaintiff
>
> Wyoming Outdoor Council submitted comments in December 2006 on the
>
> Atlantic Rim final EIS. (AR 9872-9920). Attached to these comments was a July
>
> 28, 2006, letter to Ms. Abigail Dillen, in which Dr. Scheffe noted that, "[a]fter
>
> publication (non peer reviewed literature) of the tables in 1989, the American
>
> Petroleum Institute enlisted renowned atmospheric modeling experts, Drs. John

Seinfeld and Panos Georgopoulous of the California Institute of Technology, to review the techniques.  Based on their input and our own analysis, the EPA decided at that time that the tables did not adhere to an adequate level of scientific credibility to be recommended for their intended purpose." (AR 9881).  Dr. Scheffe also stated that his method "was deemed 'not adequate' in 1989 [and is] even less adequate today." (AR 9881).  The second sentence is incomplete.  No response is thus required.  To the extent that a response is required, Wyoming denies the alleged facts in the second sentence of Pls.' Stmt. of Facts ¶ 20.

**21. Plaintiffs' Alleged Material Fact:**  Plaintiff BCA criticized BLM's reliance on the Scheffe model in comments on the Atlantic Rim Draft EIS dated February 17, 2006. AR 70538, 70599.

> **Response:**  Denied.  Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 21 as unsupported by the record.  In comments on the Atlantic Rim draft EIS dated February 17, 2006, Plaintiff Biodiversity Conservation Alliance mentioned that the BLM used the Scheffe model to derive total ozone concentrations but did not specifically criticize the BLM's reliance on the Scheffe model.  (AR 70599).

**22. Plaintiffs' Alleged Material Fact:**  BCA and other plaintiffs criticized BLM's reliance on the Scheffe model in comments on other projects being considered by Wyoming BLM. These comments included the protest of the Jack Morrow Hills Coordinated Activity Plan dated August 2004 (AR 86126); comments on the draft Rawlins Resource Management Plan dated March 11, 2005 (AR 86150); comments on the Jonah Infill Draft Environmental Impact Statement dated April 9, 2005 (AR 86169); comments by plaintiff Wyoming Outdoor Council on the Jonah Infill Air Quality Impact Analysis dated September 26, 2005 (AR 86203); comments by Vickie Stamper on the Jonah Infill Air Quality Impact Analysis dated October 5, 2005 (AR 86230); comments by Robert Yuhnke on the Jonah Infill Air Quality Impact Analysis dated October 7, 2005 (AR 86264); and Yuhnke comments on the Rawlins Resource Management Plan Air Quality Impacts (AR 86286).

> **Response:**  Admitted in part.  Denied in part.  Wyoming admits that Plaintiff Wyoming Outdoor Council stated that the Scheffe method used by the BLM "has

11

been updated twice since his nomographs were developed" in comments on the Jonah Infill Air Quality Impact Analysis dated September 26, 2005. (AR 86224). Wyoming denies that Plaintiffs criticized BLM's reliance on the Scheffe model in comments on the Jack Morrow Hills Coordinated Activity Plan dated August 2004; comments on the draft Rawlins Resource Management Plan dated March 11, 2005; comments on the Jonah Infill Draft Environmental Impact Statement dated April 9, 2005; comments by Vickie Stamper on the Jonah Infill Air Quality Impact Analysis dated October 5, 2005; comments by Robert Yuhnke on the Jonah Infill Air Quality Impact Analysis dated October 7, 2005; and Yuhnke comments on the Rawlins Resource Management Plan Air Quality Impacts. Plaintiffs did not criticize specifically the BLM's use of the Scheffe model in these comments. (AR 86126-49, 86150-68, 86169-202, 86230-63, 86264-85, 86286-97).

**23. Plaintiffs' Alleged Material Fact:** BLM recognized as early as August 2006 that the Scheffe method was obsolete. AR 8666, AR 8667.

**Response:** Denied. Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 23 as unsupported by the record. The BLM was presented with comments *alleging* that the Scheffe model was "obsolete" in August 2006. (AR 8666-67).

**24. Plaintiffs' Alleged Material Fact:** The Scheffe method has not been scientifically peer-reviewed. AR 9881.

**Response:** Admitted in part. Denied in part. Wyoming admits that "[a]fter publication (non peer reviewed literature) of the [Scheffe Point Source Screening Tables] in 1989, the American Petroleum Institute enlisted renowned atmospheric modeling experts, Drs. John Seinfeld and Panos Georgopoulous of the California

12

Institute of Technology, to review the techniques." (AR 9881). To the extent that

the Plaintiffs have paraphrased and misrepresented the record to which they cite,

the alleged material fact is denied.

**25. Plaintiffs' Alleged Material Fact:** BLM identified the background level for ozone in the Atlantic Rim project area according to the 8-hour average as 147 ug/m3. AR 2181.

**Response:** Denied. Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 25

as unsupported by the record. In Table 3-6 in the final EIS, the 8-hour "measured

background concentration" of ozone was listed as 147 ug/m3. (AR 2181). The

BLM explained that this number was derived from background data collected at

the Green River Basin Visibility Study site, Green River, Wyoming, during the

period June 10, 1988, through December 31, 2001. (*Id*.). This number represents

the fourth highest daily 8-hour value, and not the "8-hour average" as alleged by

Plaintiffs. (*Id*.).

**26. Plaintiffs' Alleged Material Fact:** BLM's modeled "Maximum Predicted" ozone impact for the project is 16.1 ug/m3. AR 2332.

**Response:** Admitted.

**27. Plaintiffs' Alleged Material Fact:** BLM used the hourly average of 75.2 ug/m3 instead of the 8-hour average background level to determine the project's total predicted impact on ground level ozone. AR 2331.

**Response:** Denied. The BLM used the *average* background concentration of

75.2 ug/m$^3$ to determine the project's total predicted impact on ozone. (AR 2181,

2331-32, 2688). In order to calculate the total predicated impact of ozone,

"[b]ackground air quality concentrations are combined with modeled project-

related air quality impacts of the same averaging time periods, and the total

predicted impacts are compared to applicable air quality standards." (AR 2183).

According to Plaintiffs, the "correct" background concentration to use in this calculation is 147 ug/m$^3$ (an 8-hour value), which is listed in Table 3-6 of the final EIS. (AR 2181). This number is based on background data collected at the Green River Basin Visibility Study site in Green River, Wyoming, during the period June 10, 1998, through December 31, 2002. (*Id*. (noting that 147 ug/m$^3$ is the "4th highest daily 8-hour value")). This number, however, is the 8-hour *maximum* background concentration and not the *average* background concentration that is required when the Scheffe model is used. (AR 2688). The *average* background concentration, as articulated in TRC's Air Quality Report, is 75.2 ug/m$^3$. (*Id*.). TRC stated that in using the Scheffe model to predict ozone impacts, "it was determined that pairing a screening modeled concentration with a *maximum* background concentration monitored over the period of record results in an overestimate of potential O$_3$ [ozone] concentrations." (*Id*.) (emphasis added). Using 75.2 ug/m$^3$, the total predicted impact from ozone is 91.3 ug/m$^3$, which is lower than both the National and the Wyoming Ambient Air Quality Standards for an 8-hour averaging period. (AR 2332, 2688).

**28. Plaintiffs' Alleged Material Fact:** BLM combined the 75.2 ug/m3 measurement with the "maximum predicted impact" of 16.1 ug/m3 due to the Atlantic Rim project, to calculate a "total predicted impact" of 91.3 ug/m3. AR 2332.

**Response:** Admitted.

**29. Plaintiffs' Alleged Material Fact:** Wyoming officials have issued several health alerts in rural gas-drilling areas due to a substantial buildup of ozone. Wyoming Department of Environmental Quality health advisories, available at ttp://deq.state.wy.us/out/outreachpressrelease.htm.

**Response:** Denied. Plaintiffs do not cite any portion of the administrative record to support the alleged facts in Pls.' Stmt. of Facts ¶ 29. They instead cite to

material outside the administrative record, which improperly expands the administrative record. *See* Section A of this Response. No response is thus required. To the extent that a response is required, Wyoming denies the alleged facts.

**30. Plaintiffs' Alleged Material Fact:** In a BLM document dated February 6, 2007, a BLM Petroleum Engineer, Jon N. Dull, evaluated known methane gas seeps in the Atlantic Rim area and wrote that "it is likely that future CBNG [coal bed natural gas] development may cause increased quantities of gas to be emitted from the known seeps. It is also possible that there exist other seeps within the ARPA that are yet to be discovered." AR 8805.

> **Response:** Admitted in Part. Denied in part. Wyoming admits that the
>
> document Plaintiff refers to is a *draft* report written by Jon N. Dull entitled
>
> *Documentation and Appraisal of Known Gas Seeps within the Atlantic Rim Coal*
>
> *Bed Natural Gas Development Area Carbon County, Wyoming.* Wyoming notes
>
> that Mr. Dull stated in that document that "[a]t this point in time there is no
>
> scientific data available to prove or disprove that CBNG [coalbed natural gas]
>
> development within the ARPA has caused or will cause increased gas flux from
>
> the known gas seeps." (AR 8805). To the extent that the Plaintiffs have
>
> paraphrased and misrepresented the record to which they cite, the alleged material
>
> fact is denied.

**31. Plaintiffs' Alleged Material Fact:** BLM's engineer Dull identified the following "fairly severe safety and environmental concerns" from the increase in methane gas seeps: (1) Potential damage to the atmosphere; (2) Potential damage to human and animal safety; and (3) Potential damage to vegetation. AR 8803, 8805.

> **Response:** Admitted in part. Denied in part. Wyoming reiterates that the report
>
> is only a draft and notes that Mr. Dull stated in that document that "[a]t this point
>
> in time there is no scientific data available to prove or disprove that CBNG

[coalbed natural gas] development within the ARPA has caused or will cause increased gas flux from the known gas seeps." (AR 8805). To the extent that the Plaintiffs have paraphrased and misrepresented the record to which they cite, the alleged material fact is denied.

**32. Plaintiffs' Alleged Material Fact:** None of the NEPA documents for the project - final EIS, draft EIS, and ROD – mention the BLM document written by Dull. AR 1436- 4881.

> **Response:** Denied. Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 32 as unsupported by the record. Although the final EIS and ROD do not specifically mention Mr. Dull's draft report, the BLM incorporated some of his listed recommendations for addressing methane seeps in the ARPA, including implementing a soil gas monitoring program, requiring the operators to drill a three well cluster of aquifer monitoring wells, and identifying future monitoring, mitigation, and remediation measures. (AR 8805-06). The final EIS identifies the adverse consequences of methane seeps and implements several of these recommendations, including future monitoring and mitigation plans. (AR 2351, 2368). Moreover, the ROD necessitates the implementation of new requirements in order to address issues not included in the final EIS. For example, the ROD incorporates Mr. Dull's recommendation that the operators should "drill and complete the three well cluster of aquifer monitoring wells" by requiring this exact measure as a "performance-based monitoring and best management practice." (AR 4844, 8806). Additionally, the final EIS requires that operators submit a "Water Management Plan" annually as part of a soil and water

monitoring program, and the ROD describes in detail the requirements of this

monitoring program.  (AR 3088, 4840-45).

**33.  Plaintiffs' Alleged Material Fact:** Comments from EPA and Plaintiffs raised concerns over the project's impacts from methane seeps, including global warming impacts. AR 3481, AR 8840.

> **Response:**  Admitted in part.  Denied in part.  Wyoming admits that Plaintiffs
>
> raised *general* concerns over the project's impacts from methane seeps and that
>
> the EPA stated that the "Atlantic Rim project will generate greenhouse gases,
>
> including methane and CO2."  (AR 3481, 8840-42).  Wyoming denies that
>
> Plaintiffs and the EPA specifically raised concerns about global warming impacts.
>
> (*Id*.).

**34.  Plaintiffs' Alleged Material Fact:** Testing of new and previously existing methane springs in the Atlantic Rim project area by Walter Merschat, the results of which were brought to BLM's attention, found "exceptionally high methane concentrations." AR 9450. See also AR 9447, AR 79100.

> **Response:**  Denied.  Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 34
>
> as unsupported by the record.  A "news release" by Plaintiff Biodiversity
>
> Conservation Alliance entitled "Atlantic Rim Methane Seeps Linked to Coalbed
>
> Methane Drilling:  Tests Indicate Exceptionally High Methane Concentrations"
>
> was released on April 27, 2007.  (AR 9450).  This "news release" lists Walt
>
> Merschat, Geochemist, Scientific Geochemical Services, as a contact.  (*Id*.).  It
>
> appears that Plaintiff Wyoming Outdoor Council sent the news release to the
>
> BLM on the same date.  (AR 9447-48).

**35.  Plaintiffs' Alleged Material Fact:**  BLM issued its Record of Decision without any errata discussing the methane concerns that the public had brought to the agency's attention. AR 4817-4819.

**Response:**  Denied.  Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 35 as unsupported by the record.  The BLM received comments from Plaintiffs and other public entities expressing concerns with methane springs in the ARPA.  (*See* AR 8840-42, 9447, 79100-105).  In response to these comments, and based on Mr. Dull's report, the BLM implemented additional "performance-based monitoring and best management practices" in the ROD to address methane seeps.  (AR 4844-45).  One of the additional requirements includes "drilling, completing, and equipping one set of three shallow groundwater-monitoring wells completed in water-bearing sandstone units stratigraphically above the principle producing coal beds in the upper Mesaverde Group."  (AR 4844).  The BLM also responded directly to Plaintiffs comments in the ROD, stating that the "BLM is looking into reports of mud pots and geysers and how they may be related to current operations.  Given that produced water is injected into geologic formations below the coal seams being dewatered, BLM currently speculates that the mud pots and geysers are not likely related to injection of produced water."  (AR 4870).

**36.  Plaintiffs' Alleged Material Fact:**  BLM has listed the sage grouse as a "Sensitive Species."  AR 4405.

**Response:**  Admitted.

**37.  Plaintiffs' Alleged Material Fact:**  Under BLM's Manual, 6840 - Special Status Species Management, BLM-authorized actions may not "contribute to the need for [a sensitive] species to become listed as a threatened or endangered species."  AR 5237-38.

**Response:**  Admitted.

**38.  Plaintiffs' Alleged Material Fact:**  Nearly half all sage grouse habitat is on BLM-managed land.  AR 5497.

18

**Response:**  Admitted in part.  Denied in part.  Wyoming admits that the BLM has stated that "[a]pproximately half of all remaining sage-grouse habitat is under BLM administration."  (AR 5497).  To the extent that the Plaintiffs have paraphrased and misrepresented the record to which they cite, the alleged material fact is denied.

**39.  Plaintiffs' Alleged Material Fact:**  Sage grouse are prevalent throughout the Atlantic Rim project area. AR 2394.

**Response:**  Admitted in part.  Denied in part.  Wyoming admits that the BLM stated in the final EIS that greater sage-grouse "are abundant within the ARPA."  (AR 2394).  To the extent that the Plaintiffs have paraphrased and misrepresented the record to which they cite, the alleged material fact is denied.

**40.  Plaintiffs' Alleged Material Fact:**  Sage grouse will be significantly harmed by this project, even after the application of mitigation measures. AR 2092, 2404.

**Response:**  Denied.  Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 40 as unsupported by the record.  Under the BLM's preferred alternative, "[i]mpacts to greater sage-grouse . . . would be significant."  (AR 2092).  However, "[t]he application of avoidance and mitigation measures would help reduce the loss of habitat and stress to greater sage-grouse in proximity to leks on public lands."  (AR 2402).

**41.  Plaintiffs' Alleged Material Fact:**  The project's mitigation measures for sage grouse include a 0.25-mile no surface disturbance zone around sage grouse leks and seasonal restrictions on surface disturbing activities within two miles of a lek (to protect nesting habitat). AR 2626.

**Response:**  Admitted.

**42.  Plaintiffs' Alleged Material Fact:**  In its January 26, 2006 comments on the draft EIS, and in its January 5, 2007 comments on the final EIS, the United States Fish and Wildlife Service ("the Service") raised a concern that the anticipated impacts of the

project might lead to the need to list sage grouse as endangered or threatened under the Endangered Species Act ("ESA"). AR 3255, AR 10134-10135.

> **Response:** Denied. Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 42
>
> as unsupported by the record. In its January 26, 2006, comments on the draft EIS,
>
> the United States Fish and Wildlife Service ("FWS") stated that "the project may
>
> have significant effects on sagebrush obligates such as greater sage-grouse . . . .
>
> As several of these species are known to be in decline from loss of habitat, the
>
> Service recommends that the Bureau not authorize an action that may exacerbate
>
> their decline and possibly result in listing of one or more of these species under
>
> the Act." (AR 3255). In its January 5, 2007, comments on the final EIS, the FWS
>
> recommended that the BLM "not authorize an action that may exacerbate the
>
> decline of fish and wildlife species and possibly result in listing under the Act."
>
> (AR 10135).

**43. Plaintiffs' Alleged Material Fact:** In its January 26, 2006 letter, the Service also stated that it "does not support a 0.25 mile protective buffer around sage-grouse leks as a mitigation measure, nor do we support a 2-mile [seasonal] buffer to protect nesting habitat" and that it "strongly recommends minimum protection measures as described by Connelly et al. (2000)." AR 3256.

> **Response:** Admitted.

**44. Plaintiffs' Alleged Material Fact:** In a 2000 Memorandum of Understanding between BLM and the Western Association of Fish and Wildlife Agencies, U.S. Forest Service, and U.S. Fish and Wildlife Service, the BLM committed specifically to consider the Connelly guidelines, referenced in the Service's letter, in its planning process. AR 86104.

> **Response:** Admitted in part. Denied in part. Wyoming admits that a 2000
>
> Memorandum of Understanding ("MOU") between the BLM and the Western
>
> Association of Fish and Wildlife Agencies; the United States Department of
>
> Agriculture, Forest Service; and the FWS states that the BLM "will consider the

WAFWA Guidelines for Management of Sage Grouse Populations and Habitats"
in its planning processes.   (AR 86104).   Wyoming denies that the BLM
"committed specifically" to consider these guidelines.  (AR 86104).

**45.  Plaintiffs' Alleged Material Fact:**   The Atlantic Rim FEIS does not cite the
Connelly guidelines. AR 2516-2544.

**Response:**  Admitted in part.  Denied in part.  Wyoming admits that the Atlantic
Rim final EIS does not list in its "references cited" a report entitled *Guidelines to
manage sage grouse populations and their habitats* prepared by John W.
Connelly et al ("Connelly Guidelines").  (AR 2516-44, 86083-101).    However,
the BLM does follow these guidelines.  The Connelly Guidelines recommend that
during *sage-grouse breeding activities*, energy-related facilities should be located
two miles from active leks whenever possible.  (AR 86,094).  Similarly, in the
"Wildlife Monitoring and Protection Plan" set forth in the final EIS, the BLM
states that "[s]urface disturbing and disruptive activities will not be allowed
within two miles of an occupied greater sage-grouse lek or in nesting and early
brood-rearing habitat associated with individual leks (when identified and
delineated), from March 1 to July 15."  (AR 2626).

**46.  Plaintiffs' Alleged Material Fact:**  A zone from 0.6 to 1.2 miles surrounding an
area of surface disturbance such as a well pad tends not to be used by elk due to human
activity. AR 2389.

**Response:**  Admitted in part.  Denied in part.  Wyoming admits that the BLM
stated in the final EIS that "[m]an-made construction such as well pads and roads
can reduce use of surrounding habitat by wildlife. . . . In addition, there is an area
surrounding these sites that tends not to be used due to the increase in human
activity.  This zone can extend . . . from 0.6 to 1.2 miles for elk *depending on the*

*season*." (AR 2389) (emphasis added). To the extent that the Plaintiffs have paraphrased and misrepresented the record to which they cite, the alleged material fact is denied.

**47. Plaintiffs' Alleged Material Fact:** BLM issued a <u>Notice of Intent to Prepare an Environmental Impact Statement for the Continental Divide-Creston Natural Gas Project</u> on March 3, 2006. 71 Fed. Reg. 10989-01.

> **Response:** Admitted.

**48. Plaintiffs' Alleged Material Fact:** BLM issued a <u>Notice of Intent to Prepare an Environmental Impact Statement – Hiawatha Regional Energy Development Project</u> on September 6, 2006. 71 Fed. Reg. 52571-01.

> **Response:** Admitted.

**49. Plaintiffs' Alleged Material Fact:** BLM did not consider either the approximately 9,000 new wells proposed as part of the Continental Divide-Creston project or the 4,208 new wells being considered as part of the Hiawatha project in its list of Reasonably Foreseeable Future Actions. AR 2484-85.

> **Response:** Admitted in part. Denied in part. Wyoming admits that the BLM concluded that the Continental Divide-Creston Natural Gas Project and the Hiawatha Regional Energy Development Project were "not reasonably foreseeable" and did not include them in the cumulative impacts analysis for the Atlantic Rim final EIS. (AR 9772-73). During the NEPA process for the ARPA, the draft EISs for the Continental Divide-Creston and Hiawatha Projects were still being prepared. *See* 71 Fed. Reg. 10,989 (Mar. 3, 2006) (issuing a notice of intent to prepare an EIS for the Continental Divide-Creston Project and to conduct public scoping); 71 Fed. Reg. 52,571 (Sept. 6, 2006) (issuing a notice of intent to prepare an EIS for the Hiawatha Project and to conduct public scoping). To the extent that the Plaintiffs have paraphrased and misrepresented the record to which they cite, the alleged material fact is denied.

**50. Plaintiffs' Alleged Material Fact:** BLM posted notices of applications for permits to drill in the Atlantic Rim project area in September 2005 well over a year before the agency issued its ROD/ FEIS authorizing the project. Exh. V attached to Plaintiffs' Reply to Opposition to Motion for Preliminary Injunction.

> **Response:** Denied. Plaintiffs do not cite any portion of the administrative record to support the alleged facts in Pls.' Stmt. of Facts ¶ 50. They instead cite to material outside the administrative record, which improperly expands the administrative record. *See* Section A of this Response. No response is thus required. To the extent that a response is required, Wyoming denies the alleged facts.

**51. Plaintiffs' Alleged Material Fact:** The notices that BLM posted for public notice pursuant to 43 C.F.R. 3162.3-1(g) did not contain the actual applications for permits to drill that it had received. Exh. V attached to Plaintiffs' Reply to Opposition to Motion for Preliminary Injunction.

> **Response:** Denied. Plaintiffs do not cite any portion of the administrative record to support the alleged facts in Pls.' Stmt. of Facts ¶ 51. They instead cite to material outside the administrative record, which improperly expands the administrative record. *See* Section A of this Response. No response is thus required. To the extent that a response is required, Wyoming denies the alleged facts.

**52. Plaintiffs' Alleged Material Fact:** BLM did not provide draft Environmental Assessments to plaintiffs or the public prior to approving the 39 wells in the Catalina A & B Plans of Developments. Declaration of Erik Molvar ¶ 15, attached as Exh. A. to Plaintiffs' Motion for Preliminary Injunction.

> **Response:** Denied. Plaintiffs do not cite any portion of the administrative record to support the alleged facts in Pls.' Stmt. of Facts ¶ 52. They instead cite to material outside the administrative record, which improperly expands the administrative record. *See* Section A of this Response. No response is thus

required.  To the extent that a response is required, Wyoming denies the alleged

facts.

**53.  Plaintiffs' Alleged Material Fact:**  BLM did not provide draft Environmental
Assessments to plaintiffs or the public prior to approving the 51 wells in the Sun Dog A
& B Plans of Development. Id.

> **Response:**  Denied.  Plaintiffs do not cite any portion of the administrative record
>
> to support the alleged facts in Pls.' Stmt. of Facts ¶ 53.  They instead cite to
>
> material outside the administrative record, which improperly expands the
>
> administrative record. *See* Section A of this Response.  No response is thus
>
> required.  To the extent that a response is required, Wyoming denies the alleged
>
> facts.

**54.  Plaintiffs' Alleged Material Fact:**  BLM provided counsel for plaintiffs draft
Environmental Assessments seven days before approving the 48 new wells in the Sun
Dog C, D, and E Plans of Development. AR 79066-79067.

> **Response:**  Admitted.

**55.  Plaintiffs' Alleged Material Fact:**  BLM did not include site-specific analysis of the
wells in the Atlantic Rim FEIS. AR 4483, 4561, 4570, 4578, 4580, 4588.

> **Response:**  Denied.  Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 55
>
> as unsupported by the record.  Even though development of site-specific
>
> mitigation plans will take place after the ROD is issued, the criteria for the plans
>
> and the specific mitigation measures that the BLM will require are discussed in
>
> detail in both the final EIS and ROD.  (AR 3081-96, AR 3149-62, 4799-4800,
>
> 4813, 4835-55).

**56.    Plaintiffs' Alleged Material Fact:** Information related to the site-specific
environmental impacts of the applications for permits to drill and the conditions of
approval to address the impacts were made available to the public for the first time in
BLM's Environmental Assessments that accompanied each plan of development
approval. See, e.g., AR 73492-73501.

**Response:** Denied. Wyoming denies the alleged facts in Pls.' Stmt. of Facts ¶ 56 as unsupported by the record. The applications for permits to drill ("APDs") for the Catalina and Sun Dog PODs were posted for 30 days in the Rawlins Field Office Information Access Center (Public Room) for review, and notification of preparation of the EAs was provided on the Wyoming BLM internet NEPA register. (AR 73494, 74065, 75020, 75175). Moreover, even though development of site-specific mitigation plans will take place after the ROD is issued, the criteria for the plans and the specific mitigation measures that the BLM will require are discussed in detail in both the final EIS and ROD. (AR 3081-96, AR 3149-62, 4799-4800, 4813, 4835-55).

DATED this 30th day of May, 2008.

DEFENDANT-INTERVENOR,
STATE OF WYOMING

/s/ Teresa R. Nelson
Teresa R. Nelson
Assistant Attorney General

Jay A. Jerde
Deputy Attorney General
Wyoming Attorney General's Office
123 Capitol Building
Cheyenne, WY  82002
(307) 777-6946
(307) 777-3542 - Facsimile
jjerde@state.wy.us

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May, 2008, the foregoing DEFENDANT-INTERVENOR STATE OF WYOMING'S RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS was electronically filed through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing to the following:

Sharon Buccino                              Robert Charles Mathes
Benjamin Longstreth                         Bjork Lindley Little, PC
Natural Resources Defense Council           1600 Stout Street, Suite 1400
1200 New York Avenue, NW                    Denver, CO  80202-3110
Suite 400                                   rmathes@bjorklindley.com
Washington, D.C. 20005
sbuccino@nrdc.org
blongstreth@nrdc.org

Lori Caramanian
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO  80294
lori.caramanian@usdoj.gov

Michael B. Wigmore
Sandra P. Franco
Bingham McCutchen, LLP
2020 K Street, NW
Washington, D.C.   20006
michael.wigmorebingham.com
s.franco@bingham.com

I further certify that I served a copy of the foregoing by placing a copy in the U.S. Mail, postage pre-paid to the following:

Aaron Bloom
Natural Resources Defense Counsel
40 West 20th Street
New York, NY  10011

                                        /s/ Teresa R. Nelson
                                        Wyoming Attorney General's Office