IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                      )
NATURAL RESOURCES DEFENSE COUNCIL, et al.,  )
                                      )
        Plaintiffs,                   )   Civ. No. 07-1709 (RJL)
                                      )
            v.                        )
                                      )
DIRK KEMPTHORNE, in his official capacity )
As the Secretary of the United States )
Department of the Interior, et al.,   )
                                      )
        Defendants.                   )
_____)
ANADARKO PETROLEUM CORPORATION,       )
WARREN RESOURCES, INC., and DOUBLE    )
EAGLE PETROLEUM CO.,                  )
                                      )
Defendant-Intervenors,                )
                                      )
STATE OF WYOMING,                     )
                                      )
Defendant-Intervenor.                 )
_____)
```

**Plaintiffs' Opposition To Defendants' Motion To Strike**

Defendants move to strike one of Plaintiffs' standing declarations and four other documents which Plaintiffs offered for the Court's consideration under the doctrine of judicial notice. In support of their motion, Defendants claim that Plaintiffs have attempted to expand the administrative record. Defendants are in error. Submission of standing declarations is a proper and necessary component of Plaintiffs' motion for summary judgment. Likewise, it is permissible for Plaintiffs to request that the court take judicial notice of documents that present facts not subject to dispute.

Defendants' motion is surprising given the insignificant role that these documents play in support of Plaintiffs' motion, which is fully supported by documents within the administrative record. In light of the minor role of these documents, Plaintiffs present a brief explanation of them and leave to the Court's discretion whether or not to take judicial notice of their contents.

Second Declaration of Erik Molvar

First, Plaintiffs properly presented the second declaration of Erik Molvar for the purpose of establishing Plaintiffs' standing. The Government seeks to strike the Second Molvar Declaration in its entirety. Mot. to Strike at 5. However, there is no reason to strike this declaration, as even the Government recognizes that it is appropriate to submit declarations in support of standing. Id. The Government contends that the declaration should be struck because the Molvar Declaration is cited to support three factual allegations.[1] To the extent that the Court does not wish to rely on the Molvar declaration in these instances, Plaintiffs hereby provide substitute administrative record cites.

The first citation to the Molvar declaration supports the proposition that "[w]hile other parts of Wyoming have seen extensive oil and gas drilling, the Atlantic Rim area has remained relatively undeveloped." Pls. Mem. at 1-2. The Court can find support for this statement in the Atlantic Rim FEIS. E.g., AR 2284 (noting that only 0.2 percent of the Atlantic Rim area has been subject to oil and gas drilling and that the "scenic quality of the area . . . is not significantly impaired . . .") and AR 1507 (noting concern in local community about the effect of the project on the "relatively undeveloped landscape").

---

[1] The third citation in Plaintiffs motion is actually to the First Declaration of Erik Molvar, which was submitted with Plaintiffs' motion for preliminary injunction. Pls. Mem. at 42.

The second and third citations to the Molvar declaration support the fact that the Bureau of Land Management (BLM) did not involve Biodiversity Conservation Alliance (BCA) or the public in the site-specific environmental review process for either of the PODs that BLM approved in June 2007. The administrative record confirms this as well, albeit through the absence of any evidence in the record showing that the environmental assessments or any environmental analyses were presented to BCA. Accordingly, the Court can substitute a citation to the AR as a whole for the second and third references to the Molvar declaration.

Judicial Notice of Ozone-related Documents

Defendants also seek to strike several documents that Plaintiffs cited pertaining to the health implications of excessive ozone levels and one BLM document finding the Scheffe method not appropriate for modeling ozone emissions. As Plaintiffs' indicated in their memorandum of law, Pls. Mem. at 7 n.3, judicial notice is appropriate for "material such as scientific data or historical fact that, although outside the common knowledge of the community, is nevertheless ascertainable with certainty without resort to cumbersome methods of proof." Melong v. Micronesian Claims Comm'n, 643 F.2d 10, 12 (D.C. Cir. 1980) (citing Fed. R. Evid. 201(b)). These documents meet this standard because they present basic scientific information concerning the implications of excess ozone levels.

The documents concerning the health implications of ozone are (1) a United States Environmental Protection Agency fact sheet on ozone, Pls. Mem. at 7 n.3; (2) two scientific papers documenting health risks from ozone, id. at n.4, and (3) a Denver Post newspaper article documenting the fact that the federal standard for safe ozone levels was exceeded by more than 50 percent in parts of Wyoming, the fact that such high ozone

3

levels "can impair breathing" and are particularly harmful to "infants, the elderly and those with respiratory problems." Id. at 18; Dkt. 51-19. As noted, the Court can determine whether or not to take judicial notice of the well-established scientific facts contained in these documents. If the Court prefers, the health implications of ozone are also well documented in caselaw. See, e.g., American Trucking Ass'n v. Envtl. Prot. Agency, 283 F.3d 355, 359 (D.C. Cir. 2002) (noting that ozone results in "[s]ignificant health effects" including "coughing; throat irritation; aggravation of existing conditions like asthma, bronchitis, heart disease, and emphysema; and lung tissue damage" and also harms vegetation, resulting in approximately 500 million dollars worth of reduced crop production per year).

      Finally, Defendants argue that the Court should not take judicial notice of BLM's Pinedale Draft Supplemental EIS (SEIS), in which BLM determined that it would not, as originally planned, rely on the Scheffe method to model ozone impacts and would instead use the CALGRID model. Plaintiffs requested that the Court take notice of the simple fact that BLM had switched to a different model in analyzing air quality impacts in the Pinedale area after it had initially used the Scheffe method. Plaintiffs cited to BLM's own document available on the agency's web site to support this fact. Pls.'s Mem. at 14.

      Plaintiffs attached the few relevant pages from the Federal Defendant's own web site as an exhibit for the Court's convenience. These pages meet the requirements for judicial notice established by this Court. See, e.g., Fed. R. Evid. 201(b); Melong, 643 F.2d at 12. Here, the fact that BLM switched to a new air quality method after it had already conducted initial analysis using the Scheffe method for the Pinedale area is "not subject to reasonable dispute." Melong, 643 F.2d at 12. Moreover, the fact that BLM

4

switched models for the Pinedale area is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Id.  The source that Plaintiffs' point to is BLM's own document on the agency's own web site.  Indeed, Federal defendants have not disputed its accuracy.

Contrary to the Federal Defendants' suggestion, Plaintiffs are not trying to add new documents to the administrative record.  Plaintiffs engaged in the process agreed to by the parties to resolve disputes regarding the record.  Defendants added several documents to the record as a result of these discussions.  At issue here is a standing declaration, as well as a few newspaper articles and agency documents that Plaintiffs offered to support certain facts they asserted in their summary judgment brief. Defendants' Motion to Strike is unnecessary as the Court can determine whether or not to take judicial notice of the documents Plaintiffs offer.  In the event that the Court decides not to take notice of any of the challenged documents, Plaintiffs request that the Court rely on the administrative record citations in Plaintiffs' opening memorandum and those additional citations provided in this Opposition.

In conclusion, Plaintiffs request that the Court deny Federal Defendants' Motion to Strike.

Respectfully submitted,

 /s/  Benjamin Longstreth
Benjamin Longstreth (DC Bar # 974015)
Sharon Buccino (D.C. Bar #432073)
Aaron Bloom
Natural Resources Defense Council
1200 New York Ave., N.W. Suite 400
Washington, D.C. 20005
(202) 289-6868

Dated: June 13, 2008

5